<u>FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **INCUBADORA MEXICANA, SA DE CV and INCUBADORAS RANCHO GRANDE S.A. DE C.V.,** **Plaintiffs,** | **CIVIL ACTION** |
| **v.** | **NO. 15-216** |
| **ZOETIS, INC. and PFIZER, INC.,** **Defendants.** | |

<u>**OPINION**</u>

## I.    INTRODUCTION

Plaintiffs are Mexican chicken breeders who have sued two American pharmaceutical companies, Defendant Zoetis Inc. and Defendant Pfizer Inc., for claims based upon Defendants' alleged manufacture, sale, and distribution of a defective poultry vaccine, "Poulvac," which failed to prevent Plaintiffs' livestock from becoming infected with the deadly Marek virus. Before the Court is Defendant Zoetis, Inc.'s motion to dismiss on the grounds of *forum non conveniens*.[1]  Zoetis asserts that the doctrine of *forum non conveniens* mandates dismissal because Mexico provides an adequate alternative forum for this dispute and the relevant interests weigh in favor of trial there.  For the reasons set forth below, the motion shall be denied.

## II.    BACKGROUND

Plaintiff Incubadora Mexicana, SA de CV ("IMSA") is a Mexican company, with corporate quarters in Puebla, Mexico.  Am. Compl. ¶ 3.  Plaintiff Incubadoras Rancho Grande S.A. de C.V. ("Rancho Grande") is also a Mexican company, with corporate headquarters in

---

[1]    Defendant Pfizer has joined in Zoetis' motion.

Sonora, Mexico.  *Id.* ¶ 5.  Both IMSA and Rancho Grande breed and supply egg-laying chickens. *Id.* ¶¶ 4, 6.  Rancho Grande also distributes chicken eggs.  *Id.* ¶ 6.

Defendant Pfizer, Inc. ("Pfizer") is an international pharmaceutical company with corporate headquarters in New York, New York.  *Id.* ¶ 8.  In 1952, Defendant Pfizer created a dedicated animal health division for the development, manufacture and distribution of animal health pharmaceuticals.  *Id.* ¶ 9.  The North American headquarters for Pfizer's Animal Health Division was located in Exton, Pennsylvania with a distribution warehouse located in Lewisberry, Pennsylvania.  *Id.* ¶ 10.  In 2002, Pfizer announced the formation of Zoetis, Inc. ("Zoetis"), which was to replace Pfizer's Animal Health Division and operate as an independent company.  *Id.* ¶ 12.  In June 2013, Zoetis moved its global headquarters from Pennsylvania to Florham Park, New Jersey and completed its corporate separation from Pfizer.  *Id.* ¶ 13.  Zoetis operates in four regions, including Mexico.  *Id.* ¶ 15.

As part of their business, Plaintiffs routinely purchase a vaccine to protect their chickens from the Marek virus, which is often fatal to young chicks if not properly treated.  *Id.* ¶ 27. Since at least 2007, Plaintiffs have purchased Defendants' Poulvac vaccine, which Defendants advertised as the "most effective [Marek vaccine] on the market."  *Id.* ¶¶ 33-36.  The shipment of the vaccines was controlled and supervised through a series of agents and couriers, all of whom Plaintiffs allege were selected and hired by Defendants.  *Id.* ¶ 21.  To effectuate sales to customers in Mexico, Defendants transferred title of the vaccine to a Belgian subsidiary.  *Id.* ¶ 21(d).  They transferred possession of the vaccine from the manufacturing plant to a customs agent, who brought the product through Mexican customs before turning it over to a Mexican "logistical services provider."  *Id.*  The logistical service provider then shipped the product, via

courier, to regional sales representatives, who delivered the product to customers, including Plaintiffs.  *Id.*

As a result of Plaintiffs' commercial relationship with Defendants, Plaintiffs "enjoyed a highly successful vaccination program in their poultry business, which resulted in very low rates of Marek's disease and in turn high yields of commercial eggs."  *Id.* ¶ 40.  In the summer of 2013 through the spring of 2014, Plaintiffs once again placed orders for Poulvac through Defendant Zoetis' sales and marketing staff.  *Id.* ¶ 41.  In January 2014, Defendants determined that the vaccine lots that had been shipped to Plaintiffs and other breeders in Mexico were defective because they had been improperly stored and/or transported.  *Id.* ¶ 47.  In response, Defendants Zoetis and Pfizer coordinated an effort to investigate, test, and manage potential claims arising out of the business losses from the defective vaccine lots.  *Id.* ¶ 50.

Defendants did not notify Plaintiffs of the defect in their vaccine until July 31, 2014, more than seven months after they became aware of the vaccine's ineffectiveness.  *Id.* ¶ 59. Meanwhile, Plaintiffs continued to administer vaccine from the defective lots.  *Id.* ¶ 51.  As a result, Plaintiffs began to experience significant loss of poultry livestock.  *Id.* ¶ 53.  Plaintiffs suffered further losses when their customers also began to experience significant livestock losses or diminished production capacity because the chickens they had purchased from Plaintiffs were treated with the defective vaccine.  *Id.* ¶ 57.

Plaintiffs attempted to contact the local Zoetis region affiliate to address the issue but were told by the head of the poultry unit at Zoetis Mexico that his branch had no authority and that Zoetis' corporate headquarters in New Jersey was handling the matter.  *Id.* ¶¶ 55-56.  In response to Plaintiffs' complaints, Zoetis suggested that the parties meet in January 2015 at the International Production and Processing Expo (IPPE) in Atlanta to try to resolve Plaintiffs'

claims. *Id.* ¶ 63. Plaintiffs sent representatives to Atlanta, where they met with Zoetis' U.S.-based in-house counsel for Latin America and Zoetis' U.S.-based Director of Global Poultry as well as the head of the poultry unit at Zoetis Mexico. *Id.* ¶ 64. During that meeting, the Zoetis personnel reiterated that the matter had to be addressed and decided by corporate officers in the United States. *Id.* ¶ 65.

## III.   LEGAL STANDARD

Under the doctrine of *forum non conveniens*, a district court may exercise its discretion to dismiss a case where: (1) an alternative forum has jurisdiction to hear the case; and (2) when trial in the plaintiff's chosen forum "would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience," or when the Plaintiff's chosen forum is inappropriate due to the court's own administrative and legal problems. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010) (citing *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008)).

The first step when considering a motion to dismiss on *forum non conveniens* grounds is to determine whether an adequate alternate forum exists. *Id.* at 160 (citing *Windt*, 529 F.3d at 189–90). If an adequate alternate forum exists, the district court must then determine the amount of deference to give the plaintiff's choice of forum. *Id.* (citing *Windt*, 529 F.3d 190). Finally, the district court must then determine if the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience. *Id.* In undertaking this final analysis, the Court considers the private interest factors affecting the convenience of the litigants and public interest factors affecting the convenience of the forum. *Windt*, 529 F.3d at 189 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509 (1947)).

4

It is the defendants' burden to demonstrate that *forum non conveniens* dismissal is warranted. *Bhatnagar v. Surrendra Overseas, Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995) (citing *Gulf Oil*, 330 U.S. at 508; *Lacey v. Cessna Aircraft Co.*, 862 F.2d 34, 43-44 (3d Cir. 1988) (*Lacey I*)). They must show that the balance of these private and public factors "tips decidedly in favor of trial in the foreign forum." *See Windt*, 529 F.3d at 192 (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) (*Lacey II*)). "If, when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." *Id.*[2]

## IV.   DISCUSSION

### A.   *Adequate Alternate Forum*

Turning first to the question of whether Zoetis has established that "an adequate alternative forum exists as to all defendants" in Mexico, the Court finds that Zoetis has met its burden. In determining whether the alternative forum is adequate, the Court must consider two factors: (1) whether the defendants are amenable to process there; and (2) whether the other forum's legal or procedural requirements would prevent the plaintiffs from litigating their claims. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). Plaintiffs do not contest that Mexican law would provide an adequate forum for their claims, Opp'n at 12 n.8, and both Zoetis and Pfizer have stipulated to jurisdiction in Mexico. Pfizer Mot. at 1; Zoetis Mot. at 6 n.5. Thus, Defendants have satisfied both requirements.

### B.   *Degree of Deference*

Having concluded that an adequate alternative forum exists in Mexico, the Court must

---

[2]   Plaintiffs also argue that Zoetis should be estopped from asserting *forum non conveniens* because Plaintiffs were instructed by their contacts at Zoetis Mexico that they needed to address their complaints with Zoetis in the United States. Opp'n at 14. Because the Court concludes that dismissal for *forum non conveniens* is inappropriate, it need not address Plaintiffs' estoppel argument.

next determine the degree of deference to give Plaintiffs' choice of forum. *Eurofins Pharma*, 623 F.3d at 160 (citing *Windt*, 529 F.3d 190). Although a foreign plaintiff's choice of forum deserves less deference than an American citizen's selection of his home forum, a foreign plaintiff's selection is still entitled to some weight. *See Lacey II*, 932 F.2d at 175. "Because the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one, that reluctance can readily be overcome by a strong showing of convenience." *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) (*Lony I*); *see also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 875 (3d Cir. 2013) ("The focus of the deference inquiry . . . is on convenience, not on the particular significance of a party's residence or citizenship or a party's ability to invoke a United States court's jurisdiction."). Thus, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Kisano*, 737 F.3d at 876.

    In arguing that Plaintiffs' choice of forum deserves "little, if any, deference," Zoetis refers the Court to the fact that Plaintiffs are both Mexican companies with no ties to Pennsylvania and concludes that Plaintiff's choice of forum was "clearly for reasons other than convenience related to Plaintiffs' residence or base of business operations." Mot. at 8-9. Plaintiffs explain, however, that their choice of forum was based on the fact that Defendants' corporate headquarters are located in Pennsylvania and New Jersey, and because some of the Poulvac lots at issue in this action were allegedly manufactured in Pennsylvania. Opp'n at 16. Moreover, Plaintiffs first attempted to address their losses with their counterparts in Mexico but were repeatedly told to bring their complaints to Zoetis in the United States. *Id*. In addition,

Plaintiffs have explained in detail why they believe much of the evidence they need to establish liability is located in the United States, including information Defendants gathered as part of an internal inquiry concerning the failed Poulvac vaccines.  Opp'n at 16-21.  On a motion to dismiss, Plaintiffs' allegations are sufficient to support an inference that their choice of forum was in fact based on convenience, and the Court will defer to that choice.  *See Lony I*, 886 F.2d at 634.

      **C.**    ***The Public Interest Factors***

Having established that the Plaintiffs' choice of forum deserves deference, the Court must next address whether "the moving defendants [have] show[n] that . . . the private and public interest factors weigh heavily on the side of dismissal."  *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) (*Lony II*) (citations omitted).  The public interest factors bearing on the inquiry include: (1) administrative difficulties flowing from court congestion; (2) the "local interest in having localized controversies decided at home"; (3) the interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case"; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and, (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Windt*, 529 F.3d at 189 (citing *Gulf Oil*, 330 U.S. at 508–509).

The public interest factors favor keeping this action before this Court.  The first relevant public-interest factor, court congestion, does not support dismissal.  Without having to address whether the docket of the Eastern District of Pennsylvania is more congested than that of Mexican courts, the Court concludes that this case can be adjudicated here without undue administrative difficulties.  As for which forum has a "local interest" in the dispute, while Mexico would certainly have an interest in protecting its citizens, there is also a local interest in

the dispute as it involves the sale of vaccines allegedly manufactured in this state, and Pennsylvania has an interest in ensuring that its corporations do not engage in tortious conduct which causes injury to anyone, regardless of where those individuals reside. For the same reasons, it is appropriate for a Pennsylvania jury to sit for this case.

The only remaining issue is the determination of the governing law. Zoetis argues that the Court should dismiss this case because Mexican law applies to Plaintiffs' claims, and the Court should not be burdened with applying foreign law when Mexican courts can provide an adequate forum. Mot. at 19; *see also Gulf Oil*, 330 U.S. at 509 ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."). Plaintiffs assert that Pennsylvania law governs because there is no conflict between Pennsylvania and Mexican law. Opp'n at 27. As explained below, the Court concludes that under Federal Rule of Civil Procedure 44.1, Zoetis has failed to satisfy its burden to articulate the applicable Mexican law and therefore the law of the forum shall apply.

In diversity actions, courts look to the choice of law rules of the forum state, in this case Pennsylvania, to determine which state's substantive law to apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). While Plaintiff is correct that Pennsylvania follows "a flexible rule which permits analysis of the policies and interests underlying the particular issue before the court and directs courts to apply the law of the state with the most interest in the problem," *Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223, 239 (3d Cir. 2010) (citations omitted), the initial step in the Court's analysis requires it to focus on whether there is a "true conflict between the relevant laws" of Pennsylvania and the foreign jurisdiction, in this case Mexico. *Id.* A true conflict exists and "[a] deeper [choice of law] analysis is necessary only if

*both* jurisdictions' interests would be impaired by the application of the other's laws . . . ."
*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (internal quotations and citations omitted).  When a true conflict occurs, the court applies the "law of the state having the most significant contacts or relationships with the particular issue."  *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005) (citation omitted).  On the other hand, a false conflict exists when only one jurisdiction's interests would be impaired by the application of the other's laws. *Lacey II*, 932 F.2d at 187.  If there is a false conflict, the court should apply the law of the only interested jurisdiction.  *Id.*

Here, this analysis is complicated by the fact that the Court must analyze Mexican law. Rule 44.1 controls the application of foreign law in federal court.  It provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.  In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law.

While this rule empowers a district court with the authority to determine applicable foreign law, it imposes no obligation on the court to inquire into foreign law *sua sponte*.  *See Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999).  Under Rule 44.1, it is the responsibility of the party seeking application of foreign law to "carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case."  *Bel-Ray*, 181 F.3d at 440 (citing *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996)).  Therefore, where the party seeking application of foreign law does not satisfy both of these burdens, the law of the forum will apply.  *See Walter v. Neth. Mead N.V.*, 514 F.2d 1130, 1137 n.14 (3d Cir. 1975) (concluding that although the law of

the Netherlands potentially applied, the court should assume it is consistent with the law of the forum where a party did not conclusively establish the foreign law).

Here, Zoetis has the burden of establishing Mexican law and showing that it differs from Pennsylvania law. *See Bel-Ray*, 181 F.3d at 440. It did not carry that burden.[3] Zoetis' arguments with respect to choice of law focused on whether Mexico or Pennsylvania has a greater interest in the dispute. *See* Mot. at 16-19. As explained above, that analysis is only significant *after* the Court analyzes both Pennsylvania and Mexican law to see if they conflict. Zoetis has failed to satisfy the necessary predicate to this threshold analysis, *i.e.*, explaining to the Court what the relevant Mexican law is. *See Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006). Although Zoetis submitted an expert declaration on Mexican law, that declaration focused solely on whether Plaintiffs would have "access to justice" in Mexico and did not identify any particular Mexican laws or cite any particular cases. The declaration certainly did not explain how Mexican law differs for each of the ten counts in Plaintiffs' complaint. *See* Mot., Ex. C. In summary, Zoetis has failed to provide the Court with the tools to engage in the required threshold analysis. Under these circumstances, the Court assumes that Mexican law is the same as Pennsylvania law. *See Ferrostaal*, 447 F.3d at 218. Accordingly, the public interest factors either favor maintaining the litigation in this forum or, at the very least, do not "establish oppressiveness and vexation to [Zoetis] out of all proportion to the plaintiff's convenience." *Eurofins Pharma*, 623 F.3d at 160.

### D.     *Private Interest*

Turning to the factors pertaining to the private interests of the litigants, the Court evaluates: (1) the relative ease of access to sources of proof; (2) availability of compulsory

---

[3]     Nor has Zoetis met its burden to identify and explain Mexican law in its separate motion to dismiss under Federal Rules of Civil Procedure 8, 12(b)(6), 7 and 19.

process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and, (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Windt*, 529 F.3d at 189 (citing *Gulf Oil*, 330 U.S. at 508)).  Here, a conclusion as to whether the private interest factors favor Plaintiffs or Defendants depends in large part upon where one locates the relevant facts.  Naturally, Zoetis argues that the relevant documents and witnesses are located in Mexico, while Plaintiffs argue that the relevant documents and witnesses are located in the United States.

In support of its motion, Zoetis contends that important documents in Mexico include, among other things, Plaintiffs' documents, documents relating to the transportation, storage or handling of the Poulvac vaccine after it left Zoetis' warehouse but before it made its way to the Plaintiffs, documents relating to Plaintiffs' use of the vaccine, and documents relating to damages.  Mot. at 11-12.  Zoetis further notes that if the litigation took place in this Court, the parties would need to work through the Hague Convention to obtain these documents.  *Id.* at 12. Zoetis also speculates that many relevant documents will be in Spanish and require translation. *Id.*  Finally, Zoetis argues that the significant witnesses will all be located in Mexico and notes that bringing them to the United States for depositions and trial would be costly and time consuming.  *Id.* at 13.

In counterpart, Plaintiffs argue that the most significant documents exist in the United States, likely at Zoetis' headquarters in New Jersey.  These documents, Plaintiffs contend, relate to the "design, manufacture, testing, inspection and distribution of the subject lots of vaccine, all of which took place in the United States."  Opp'n at 18.  Additionally, Plaintiffs argue that they require documents concerning Zoetis' "sales, exports, and [its] response upon learning of the defect in its product – including the decision to recall its products, test defective lots of vaccine,

and reimburse some customers but not others," all of which are located in the United States.  *Id.*
Most importantly, Plaintiffs argue that "any remaining testable samples of the subject lots are in
Zoetis' possession in the United States," and "[i]f the trial were held in Mexico, it is uncertain
whether these biological agents could even be shipped or tested abroad."  *Id.* at 20-21.  As for
witnesses, Plaintiffs assert that they are "more than willing" to make their own witnesses
available in this District, thus relieving any burden on Zoetis.  *Id.* at 18.

       The Court finds that, at this stage in the litigation, it is premature to attempt to determine
whether the most significant documents and witnesses are located in the United States – where
Zoetis manufactured and sold the Poulvac vaccine, or in Mexico – where downstream merchants
transported and stored the vaccine before delivering it to Plaintiffs.  At best this factor balances
equally for Plaintiffs and Zoetis.  Because on a motion to dismiss all facts must be interpreted in
the light most favorable to Plaintiffs, *see Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d
Cir. 2011), and because Plaintiffs' choice of forum should not be disturbed unless it is
overwhelmingly outweighed by Defendants' inconvenience, *see Windt*, 529 F.3d at 192 (citation
omitted), the Court concludes that questions regarding the availability of evidence and witnesses
and the costs associated with their production should be resolved in favor of Plaintiffs.

       Finally, Zoetis contends that dismissal is warranted because it would be unable to
implead certain entities that it argues are responsible for the inefficacy of the Poulvac vaccine as
this Court does not have personal jurisdiction over Mexican entities.  Mot. at 14-15.  These
include the entities that Defendants assert Plaintiffs contracted with in Mexico, including Zoetis
Mexico and/or the Mexican distributors who transported the relevant Poulvac lots.  *Id.*  Plaintiffs
counter that this argument is a red herring given that Zoetis "has either corporate or contractual
relationships with, or control over, all entities involved in the process."  Opp'n at 21.  While the

12

inability to implead other potentially responsible third-party tortfeasors does traditionally support dismissal for *forum non conveniens*, *see Piper*, 454 U.S. at 259, the Court concludes that although the issue of whether Defendants' inability to implead Mexican third parties warrants dismissal, in this motion to dismiss for *forum non conveniens* it does not outweigh the other factors.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____
**WENDY BEETLESTONE, J.**