IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INCUBADORA MEXICANA, SA DE CV** and **INCUBADORA RANCHO GRANDE S.A. DE C.V.**, **Plaintiffs,** | **CIVIL ACTION** |
| v. | NO.  15-216 |
| **ZOETIS, INC. and PFIZER, INC.**, **Defendants.** | |

**OPINION**

### I.      INTRODUCTION

Plaintiffs are Mexican chicken breeders who have sued two American pharmaceutical companies, Defendant Zoetis Inc. and Defendant Pfizer Inc., for claims based upon Defendant's alleged manufacture, sale, and distribution of a defective poultry vaccine, "Poulvac," which failed to prevent the infection of the Marek virus in Plaintiffs' livestock.  Before the Court is Defendant Zoetis, Inc.'s and Pfizer Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint. Defendants argue that under Federal Rule of Civil Procedure 12(b)(7), the Court should dismiss Plaintiffs' action in its entirety for failure to join indispensable parties as required by Rule 19. Additionally, Defendants move to dismiss various claims under Rule 12(b)(6) for failing to meet the pleading requirements under Rules 8 and 9.

### II.     BACKGROUND

The relevant facts of this case have already been set forth in the Court's previous opinion on Defendants' Motion to Dismiss on the grounds of *forum non-conveniens*.  That discussion is herein incorporated by reference.  *See Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, -- F. Supp. 3d --, No. 15-216, 2015 WL 4598031, at *1 (E.D. Pa. July 31, 2015).

### III.  DISCUSSION

#### A.  *Rule 19*

Defendants move to dismiss this action under Rule 12(b)(7) for failing to join Zoetis Mexico, Defendant Zoetis, Inc.'s Mexican subsidiary, as well as two Mexican companies that were not identified in Plaintiffs' Amended Complaint, Distribuidora Agropecuaria de Sonora SA de CV ("DAS") and Insumos Agropecuarios Algran SA de CV ("Algran"), which Defendants describe as the "distributors of vaccine and other animal health products" that contracted with Plaintiffs for the sale of the defective Poulvac vaccine lots and that are "not subsidiaries or corporate affiliates of Defendants." Mot. at 3, Ex. B ¶ 6.  In essence, Defendants argue that DAS, Algran, and Zoetis Mexico (together, the "Mexican entities") are necessary parties to the litigation because: (1) the Mexican entities, not Defendants, actually entered into contracts with Plaintiffs for the Poulvac vaccine; and (2) the Mexican entities, not Defendants, are responsible for damaging the vaccine lots that that Plaintiffs ultimately received.  Mot. at 10-11.  Defendants further argue that because this Court does not have personal jurisdiction over the Mexican entities, and because those entities are indispensable, this case must be dismissed.  *Id.* at 15.

##### 1.  Legal Standard

To determine if a party is "indispensable" under Rules 12(b)(7) and 19, a court must perform a two-step analysis.  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).  First, the court must determine if the absent parties are "necessary" pursuant to Rule 19(a).  *Id.*  Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an

2

>existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Subsections (a)(1)(A) and (a)(1)(B) are listed in the disjunctive. *Gen. Refractories Co.*, 500 F.3d at 312. If the parties are necessary under either subsection (a)(1)(A) or (a)(1)(B) but joinder is not feasible, then the court must determine whether the parties are "indispensable" pursuant to Rule 19(b), which provides factors for the Court to consider in determining "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. Proc. Rule 19(b). However, if the court concludes in its Rule 19(a) analysis that the absent parties are not necessary under either subsection (a)(1)(A) or (a)(1)(B), the Court need not engage in any analysis under Rule 19(b). *See Gen. Refractories Co.*, 500 F.3d at 313 ("[A] holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that it must dismiss a case. . . .").

In conducting a Rule 19 analysis the Court must accept as true the allegations in the Amended Complaint and draw all reasonable inferences in the non-moving party's favor. The party moving for dismissal for failure to join an absent party "bears the burden of showing why an absent party should be joined under Rule 19." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011).

### 2. Rule 19(a) Analysis

The question of whether the Mexican entities are "necessary" parties under subsection (a)(1)(A) of Rule 19 turns on whether "complete relief" can be accorded to the parties in the action in the absence of the Mexican entities. *See Gen. Refractories Co.*, 500 F.3d at 313. Defendants argue that Plaintiffs cannot obtain complete relief in this lawsuit absent the Mexican entities because Plaintiffs' "tort claims on their face implicate [those] entities." Mot. at 11. Among other things, Defendants note that the Amended Complaint alleges that Plaintiffs reached

3

out to Zoetis Mexico when the problem with their vaccine first surfaced, a "fair implication" of which, Defendants contend, is that "Plaintiffs believed this non-party had a role in the alleged product issues." *Id.*  Defendants reason that if the Mexican entities are found to have caused the damage to Plaintiffs' vaccine lots instead of Defendants, Plaintiffs will be left without a complete remedy.  In support of this conclusion, Defendants rely heavily upon the reasoning in *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557 (M.D. Pa. 1982), which held that foreign third parties were necessary because they, not the defendant, might be liable for the alleged damage.  In response, Plaintiffs argue that a Rule 19(a)(1)(A) inquiry is limited to whether the Court can grant complete relief to the persons already parties to the action, regardless of whether the plaintiff may have a better or separate claim against an absent party.  Opp'n at 16 (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405-06 (3d Cir. 1993)).  The Court agrees.

     Because the goal of Rule 19 is to preclude multiple lawsuits on the same cause of action, some courts, including *Whyham*, have interpreted the "complete relief" clause broadly, commanding joinder whenever nonjoinder will fail to resolve all related claims of all potentially interested persons.  *See Whyham*, 96 F.R.D. at 560.  Since *Whyham*, however, the Third Circuit has conclusively held that "[c]ompleteness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Angst v. Royal Maccabees Life Ins. Co*., 77 F.3d 701, 705 (3d Cir. 1996); *see also Janney*, 11 F.3d at 405 ("A Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action.  The effect a decision may have on the absent party is not material.").  Accordingly, a party is necessary only when nonjoinder precludes the court from effecting relief not in some overall sense, but between current parties only.  *See*

*Angst*, 77 F.3d at 705.  Here, Plaintiffs and Defendants will effectively resolve *their* entire controversy despite the Mexican entities' absence.  In other words, this action will determine whether Defendants are liable to Plaintiffs for Plaintiffs' loss.  If Defendants are found liable, Plaintiffs will be made whole.  If Defendants are found not liable, Plaintiffs will have resolved their controversy with Defendants.  The fact that Plaintiffs have elected not to bring a separate cause of action against the Mexican entities here – and therefore could not obtain relief from the Mexican entities in this litigation should the facts show that they, and not Defendants, are liable for Plaintiffs' injuries – does not make the Mexican entities necessary parties.  *See Temple Univ. Hosp., Inc. v. Grp. Health, Inc*., 413 F. Supp. 2d 420, 429 (E.D. Pa. 2005) ("The mere theoretical possibility that [plaintiff] may choose to sue [a third party] if the defendants prevail in this action is not sufficient to demonstrate that [the third party] is necessary.").  Nor are the Mexican entities necessary because Defendants could – should they be found liable – theoretically seek contribution from those entities in a later lawsuit.  *See Freedom Int'l Trucks, Inc. v. Eagle Enters., Inc.*, No. 97-4237, 1998 WL 695397, at *3 (E.D. Pa. Oct. 5, 1998) (citations omitted) ("[I]t is well established that Rule 19 does not require the joinder of . . . persons against whom the defendant may have a claim for contribution.").  Accordingly, the Court concludes that the Mexican entities are not necessary parties under subsection (a)(1)(A).

Turning next to subsection (a)(1)(B) of Rule 19, the Court must consider whether the Mexican entities "claim[ ] an interest relating to the subject of the action" and are "so situated that disposing of the action without them may" either: (i) impair or impede the Mexican entities' ability to protect their interests; or, (ii) subject an existing party "to a substantial risk of incurring double, multiple or otherwise inconsistent obligations" because of the Mexican parties' interest.  Rule 19(a)(1)(B).  With respect to subsection (a)(1)(B)(i), Defendants have failed to show that

the absent Mexican entities in fact "claim an interest" in the subject of this litigation such that their interests need protecting.  On the record before the Court, none of the Mexican parties have claimed any interest in the subject matter of this litigation.  *See* Opp'n at 20.  Defendants posit that because the Mexican entities "*may* claim an interest relating to the subject matter of the action," Mot. at 13 (emphasis added), and that "findings [in this litigation] *may* weaken the [Mexican] entities' bargaining position and/or impair their ability to protect their interests in a future litigation," *id.* at 14 (emphasis added), they are necessary parties.  *Huber v. Taylor*, however, puts paid to that argument from possibility.  In *Huber*, the Third Circuit held that an unsubstantiated or speculative risk will not satisfy Rule 19(a)(1)(B) criteria, and the possibility that an absent party's rights will be harmed under subsection (a)(1)(B)(i) must be real.  *See Huber v. Taylor*, 532, F.3d 237, 250-51 (3d Cir. 2008).  Accordingly, Defendants have failed to show that the Mexican entities are necessary under subsection (a)(1)(B)(i) of Rule 19.

Similarly, Defendants have failed to establish that they would be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of a claimed interest under subsection (a)(1)(B)(ii) of the Rule.  Defendants express concern that "[i]f Plaintiffs lose this suit, or are unhappy with any damages awarded, they could presumably attempt to try again [by] su[ing the Mexican] nonparties."  Mot. at 14.  Defendants also argue that if they are found liable in this action, they may pursue contribution claims against the Mexican entities in Mexico, which may result in a different assessment of liability.  *Id.* at 15.  As stated above, speculation as to what might happen in a potential future litigation does not satisfy the standard.  Absent pending litigation between Defendants and the absent parties, there is no real risk of multiple or inconsistent obligations.  *See Diaz Contracting, Inc. v. Lisbon Contractors, Inc.*, No. 88-9203, 1991 WL 53663, at *6 (E.D. Pa. Apr. 2, 1991).  But even if such

a lawsuit were to occur, the fact that another court may assign liability differently from this Court does not subject Defendant to multiple or inconsistent obligations within the meaning of subsection (a)(1)(B)(ii).  *See, e.g.*, *Janney*, 11 F.3d at 411 (holding that the risk of "double liability" does not include the situation where, if a defendant loses, he may, or is likely to, seek recovery or indemnification from the absent party."); *Micheel v. Haralson*, 586 F. Supp. 169, 171 (E.D. Pa. 1983) ("Rule 19(a)[(1)(B)(ii)] was intended to protect against inconsistent *obligations*, not inconsistent *adjudications*" (emphasis added)).  Accordingly, the Court finds that the Mexican entities are not necessary parties under subsection (a)(1)(B)(ii).

Because joinder is not required under either Rule 19(a)(1)(A) or (B), the Court concludes that the Mexican entities are not necessary parties to this action.  Accordingly, it is unnecessary for the Court to analyze whether the Mexican entities are indispensable under Rule 19(b).  *See Janney*, 11 F.3d at 413.

### B. Rules 8 and 12(b)(6)

#### 1. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss an action for failure to state a claim upon which relief could be granted.  Defendants move to dismiss Plaintiffs' Amended Complaint under the pleading standards of Federal Rule of Civil Procedure 8(a).  To survive a motion to dismiss under Rule 8(a), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips*

*v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  Indeed, *Twombly* held that Rule 8(a) "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averments that he wants relief and is entitled to it."  *Twombly*, 550 U.S. at 555 n.3.  In other words, the "threshold requirement" of Rule 8(a) is that the allegations in the complaint "possess enough heft to show that the pleader is entitled to relief."  *Id.* at 557.

### 2. Breach of Warranty

Defendants assert that Plaintiffs' breach of express warranty claim in Count Three fails for two reasons.  First, they argue that Plaintiffs have failed to state a claim for breach of express warranty because they "have not pled the specific statement(s) they allege constituted the express warranty, how the alleged warranty was made, by whom the alleged warranty was made, or when the alleged warranty was made."  Mot. at 23.  Second, Defendants argue that Plaintiffs' breach of express warranty claim fails because Plaintiffs "have not pled facts sufficient to show compliance with Pennsylvania's pre-suit notice requirement," which requires a buyer to provide notification of the alleged product defect to the manufacturer prior to bringing suit on a breach-of-warranty theory.  Mot. at 24 (citing 13 Pa. Cons. Stat. § 2607(c)(1)).[1]

With respect to Defendant's first argument, under the Pennsylvania Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  12 Pa. Cons. Stat. § 2313(a)(1).  "To create an express

---

[1]   In deciding Defendants' motion to dismiss on grounds of *forum non conveniens*, the Court analyzed whether Mexican or Pennsylvania law would apply and concluded that under Federal Rule of Civil Procedure 44.1 Defendants had failed to satisfy their burden to articulate the applicable Mexican law and thus the law of the forum, Pennsylvania, applies.  *See Incubadora Mexicana*, 2015 WL 4598031, at *5.  Defendants' motion to dismiss at issue here does not include any further explanation of Mexican law that would allow the Court to reach a different conclusion.

warranty, the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." *Shuker v. Smith & Nephew PLC*, No. 13-6158, 2015 WL 1475368, at *12 (E.D. Pa. Mar. 31, 2015), *motion to certify appeal denied*, No. 13-6158, 2015 WL 4770987 (E.D. Pa. Aug. 13, 2015) (citations omitted).  A promise becomes the basis of the bargain if the plaintiffs can prove "that [they] read, heard, saw or knew of the advertisement containing the affirmation of fact or promise." *Parkinson v. Guidant Corp.*, 315 F.Supp.2d 741, 452 (W.D. Pa. 2004) (quoting *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *rev'd on other grounds*, 505 U.S. 504 (1992)).  Absent a demonstration that a promise or affirmative statement was made, how or by whom the promise was made, or what was in fact promised, a claim for breach of express warranty is not sufficiently pled.  *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 501–02 (W.D. Pa. 2012).

In response to Defendants' motion to dismiss, Plaintiffs point to the following allegations in the Amended Complaint:

> 32.     As a result of numerous visits by Defendant Pfizer's, and then Defendant Zoetis's sales and marketing staff, Plaintiffs began ordering poultry vaccine from Defendants.  Plaintiffs' accounts were handled by Jaime Gallardo and Victor Perez.  Both Mr. Gallardo and Mr. Perez were long time employees of Defendant Pfizer and are current members of Defendant Zoetis' senior sales and marketing staff.
>
> 33.     During these visits, the sales and marketing staff of Defendant Pfizer and Defendant Zoetis **promised Plaintiffs that their line of Market vaccine was the most effective on the market**.  Defendants' agents and their promotional material **promised that their vaccines were manufactured, shipped and stored under optimal conditions to insure [sic] maximum inoculation of their chickens**.
>
> 34.     As a result of Defendants' statements and promotional material, Plaintiffs decided to switch suppliers.

Of the statements identified above, the second bolded statement constitutes an express warranty.  Unlike the statement that Defendants' Marek vaccine was "the most effective on the market," which is an exaggeration or overstatement "expressed in broad, vague, and

9

commendatory language," *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993), the statement in the promotional material concerning the manufacturing, shipping, and storing of the Poulvac vaccine specifically describes a promise to monitor the product from the manufacturing stage up until the delivery to customers to ensure that the vaccine is still effective. Accordingly, the Amended Complaint alleges an express warranty as to ensuring that the conditions in which the vaccine was stored and shipped would not compromise the efficacy of the vaccine.[2]

With respect to Defendants' argument that Plaintiffs failed to comply with Pennsylvania's pre-suit notice requirement, Defendants argue that although the Amended Complaint alleges that Plaintiffs notified Zoetis Mexico about the defective vaccine lots, "they do not plead that they adequately and timely notified both Defendants." Mot. at 24. A review of the Amended Complaint clearly indicates that while Plaintiffs notified Defendant Zoetis about the defective lots prior to bringing this lawsuit, they did not give the same notice to Defendant Pfizer. Specifically, the Amended Complaint states that as a result of Plaintiffs' discussion with Zoetis Mexico, Plaintiffs were told that "the matter was being handled out of the legal department of Defendant Zoetis's corporate headquarters in New Jersey," Am. Compl. ¶ 56, and at Defendant Zoetis' suggestion, the parties, including representatives from Zoetis' U.S.-based legal team, met in January 2015 at the International Production and Processing Expo in Atlanta, where Plaintiffs were "advised . . . that this was a matter to be addressed with Zoetis in the United States." *Id.* ¶¶ 63-65. Moreover, the Amended Complaint alleges that the attendees in Atlanta "assured Plaintiffs that Defendant Zoetis was aware of the problem with the vaccine that

---

[2] Defendants also argue that the Amended Complaint does not include a factual basis to support Plaintiffs' contention that Jaime Gallardo or Victor Perez, identified as Defendants' "senior sales and marketing staff" are in fact agents or representatives of Defendants. Mot. at 23-24. Because paragraph 33 of the Amended Complaint alleges that the express warranty was made both by Defendants' "agents and their promotional material," the Court need not analyze the nature of Mr. Gallardo and Mr. Perez's employment relationship with Defendants at this time.

they sold to Plaintiffs and that they wanted to reestablish their commitment to their one time partner." *Id.* ¶ 65. These allegations sufficiently plead that Plaintiffs notified Defendant Zoetis' legal representatives in the United States about their grievances and gave Defendant Zoetis an opportunity to resolve the dispute regarding an alleged breach before Plaintiffs initiated this lawsuit. However, no similar allegations were made with respect to Defendant Pfizer. "[T]he purpose of notification under § 2607(c) is to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit." *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718 (E.D. Pa. 2013) (citation omitted). Plaintiffs have not alleged facts to support an inference that they gave Defendant Pfizer an opportunity to resolve the dispute prior to bringing this lawsuit. Accordingly, the Court shall deny Defendants' motion to dismiss Count Three with respect to Defendant Zoetis and grant the motion with respect to Defendant Pfizer.

### 3. Breach of Implied Warranty of Fitness for a Particular Purpose

Plaintiffs have brought three implied warranty claims. In Count Five, Plaintiffs assert a "breach of implied warranty," although the theory underlying this claim is unclear. *See* Am. Compl. ¶¶ 95-102. In Count Six, Plaintiffs assert both a breach of implied warranty of merchantability and a breach of implied warranty of fitness for a particular purpose. *See id.* ¶¶ 103-107. Defendants' motion to dismiss addresses only the implied warranty claims brought in Count Six. *See* Mot. at 24. First, Defendants argue that Plaintiffs' claims for breach of implied warranty under Count Six fail generally because they do not comply with the notice requirements of Section 2607(c). *See id.* For reasons identified in Section B.2 above, the Court finds that Plaintiffs have alleged facts to support an inference that they complied with Section 2607(c) with respect to Defendant Zoetis, but not Defendant Pfizer. Accordingly, Defendants' motion to

dismiss Count Six shall be granted with respect to Defendant Pfizer for Plaintiffs' failure to comply with Section 2607(c).

The Court shall, however, deny Defendants' motion to dismiss Plaintiffs' Count Six claim for breach of the implied warranty of fitness for a particular purpose. The implied warranty of fitness for a particular purpose "arise[s] by operation of law and serve[s] to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (citation omitted). To establish a breach of the implied warranty of fitness for a particular purpose, a plaintiff must show that the seller had reason to know of the buyer's particular purpose at the time of sale *and* that the buyer was relying on the seller's expertise. *Id.* (emphasis added). In that case, the goods are implicitly warranted to be fit for that particular purpose. *Id.*; 13 Pa. Cons. Stat. § 2315. Moreover, a plaintiff must show that the goods they purchased from defendant were defective. *Altronics*, 957 F.2d at 1105.

The Amended Complaint alleges that Defendants marketed the Poulvac vaccine as one that effectively prevented the infection of the Marek virus in chickens, and as a result of these marketing efforts, Plaintiffs began to order their Marek vaccine from Defendants. Am. Compl. ¶¶ 33-34. Plaintiffs have therefore established that, for purposes of this motion, Defendants knew their customers would use the Poulvac vaccine to inoculate chickens against the Marek disease and relied on their expertise in selecting which vaccine to purchase. Plaintiffs have further alleged that the Poulvac vaccine lots they received from Defendants in the summer of 2013 were defective because after administering the defective lots Plaintiffs began to experience significant loss of livestock among their poultry stocks due to the Marek virus. *Id.* ¶¶ 53-54.

Thus, Plaintiffs have successfully pleaded a claim for breach of implied warranty of fitness for a particular purpose against Defendants Zoetis.

### 4. Economic Loss Doctrine

Defendants argue that Plaintiffs' tort-based claims in Count One (Negligence), Count Two (Negligent Hiring and Supervision), Count Nine (Negligent Misrepresentation), and Count Ten (Strict Liability) are barred by Pennsylvania's economic loss doctrine. Mot. at 19. Specifically, Defendants argue that because Plaintiffs have alleged that they had a "commercial relationship" with Defendants, the parties' respective duties and obligations are "essentially contractual in nature" and therefore "defined by the terms of an alleged contract."[3] *Id.* at 20. Plaintiffs respond that the applicability of the economic loss doctrine depends on whether the alleged tortious conduct overlaps with the specific obligations set forth in the commercial relationship between the parties, and because there is no written contract governing Plaintiffs' relationship with Defendants, it is unclear at this stage of the litigation what the precise terms of any relevant agreement entails. Opp'n at 24-25. Because the tort claims at issue *may* have a legal foundation separate and apart from any underlying contractual relationship with Defendants, Plaintiffs therefore urge the Court to refrain from deciding whether the economic loss doctrine bars their tort claims until they have had an opportunity for discovery and can determine the precise contours of the agreement between the parties. *Id.* at 25-26.

A review of the relevant case law indicates that Plaintiffs' tort claims are barred by the economic loss doctrine regardless of the precise contours of their commercial relationship with Defendants. The "economic loss doctrine" prohibits tort damages when a product malfunctions and the only damages alleged are economic loss resulting from disappointed commercial

---

[3] Defendants also cite to paragraph 92 of the Amended Complaint, which they represent includes an allegation about statements that formed the "basis of *the contract* for sale" between the parties. Mot. at 20. Defendants misquote Plaintiff's Amended Complaint, which did not include an explicit reference to a contract.

13

expectations. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002); *REM Coal Co. v. Clark Equipment Co.*, 563 A.2d 128, 129 (Pa. Super. 1989). Where the purchaser of a product has sued the manufacturer, and the only loss that the purchaser alleges is economic loss stemming from the product's failure to operate as expected, "express and implied warranties under contract law are best suited to compensate [the purchaser] for a loss in product value." *Werwinski*, 286 F.3d at 671 (citing *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 872-73 (1986)). Like Plaintiffs here, the plaintiff in *Werwinski* alleged that a particular product was defective and that the manufacturer had known of the defect but continued to sell the product with the defective part. The question in *Werwinski* was whether tort damages, such as punitive damages, should be awardable if the plaintiff could prove fraudulent breach of warranty. Holding that tort damages were not available even in the case of intentional fraud, the Third Circuit noted that the manufacturer's state of mind is largely irrelevant because the economic damages are the same whether the warranty was breached innocently, negligently, maliciously or fraudulently. *See id.* at 679-80. Thus, the Third Circuit concluded, "when loss of the benefit of a bargain is the plaintiff's sole loss, . . . the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims." *Id.*

Here, the plain language of the Amended Complaint confirms that Plaintiffs' negligence, negligent hiring, negligent misrepresentation, and strict liability claims arise from economic loss they suffered because the product they purchased from Defendants failed to operate as warranted. The Amended Complaint alleges losses to livestock, lost profits, loss of reputation, loss of business opportunity, and damage to goodwill, *see id.* ¶¶ 54-58, all of which constitute economic losses resulting from disappointed commercial expectations. *See, e.g.*, *East River*, 476

14

U.S. at 871 (noting that when a product malfunctions, "the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or . . . experiences increased costs in performing a service"); *Lucker Mfg. v. Milwaukee Steel Foundry*, 777 F. Supp. 413, 416 (E.D. Pa. 1991) (interpreting *East River* to prohibit tort damages resulting from loss of goodwill and/or reputation); *see also D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 N.W.2d 587, 595 (Wis. Ct. App. 1990) (holding that recovery in tort for damages to plaintiff's livestock was barred by economic loss doctrine where plaintiff purchased a faulty feeding system from defendant and the compromised feed caused harm to the plaintiff's livestock). As addressed above, Plaintiffs have adequately alleged breach of warranty claims against Defendants for harm resulting from the allegedly defective products. Should these claims succeed, Plaintiffs will be entitled to damages that would place them in the position they would have been in had the vaccine functioned properly. Plaintiffs' argument that it would be premature to dismiss their tort claims without knowing the exact terms of the contract is therefore unpersuasive. Whatever Plaintiffs' precise relationship with Defendants may have been, they have only alleged economic losses resulting from their receipt of the defective vaccine lots. Accordingly, the Court shall grant Defendants' motion to dismiss Counts One, Two, Nine, and Ten of the Amended Complaint.

### 5. Unjust Enrichment

Turning next to Plaintiffs' claim for unjust enrichment, Defendants argue that Plaintiffs have failed to satisfy the pleading requirements for unjust enrichment in Count Seven because: (1) the defective vaccine lots may have become ineffective after they left Defendants' hands, and (2) Plaintiffs did not allege that they made any direct payments to either Defendant. Mot. at 26-27.

Viewing the allegations in the light most favorable to the plaintiffs, the Amended Complaint sufficiently states a cause of action for unjust enrichment. Plaintiffs need not have purchased the vaccine lots at issue directly from Defendants to have "conferred benefits on the defendant." *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006); *D.A. Hill Co. v. CleveTrust Realty Investors*, 573 A.2d 1005, 1009 (Pa. 1990); *Com. ex rel. Pappert v. Tap Pharm. Prods., Inc.*, 885 A.2d 1127, 1137-38 (Pa. Commw. 2005). Although discovery may reveal that, in fact, Plaintiffs do not have an unjust enrichment claim, it would be premature at this juncture to so conclude. Accordingly, the Court shall deny Defendants' motion to dismiss Plaintiffs' unjust enrichment claim.

### 6. Fraud

In Count Eight, Plaintiffs allege that Defendants are liable for fraud because they "knew at the time they contracted to sell Poulvac vaccine to Plaintiffs, or at some critical point in time before Plaintiffs actually used the subject Poulvac vaccine on their livestock, that the lot or lots from which the shipment had come was defective and would not prevent Marek's virus." Am. Compl. ¶ 124. Defendants argue that Plaintiffs' fraud claim should be dismissed because the Amended Complaint does not plead fraud with sufficient particularity as required under Rule 9(b). Mot. at 24. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This heightened pleading standard requires "plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Stated

differently, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of . . . fraud with all of the essential background that would accompany the first paragraph of any newspaper story[,] that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation and internal quotation marks omitted). Defendants here argue that Plaintiffs fail to allege when the parties entered into a contract, when they received the allegedly defective products, or when the Plaintiffs in fact administered those lots. Mot. at 25.

An analysis of the Amended Complaint supports Defendants' position. In order to adequately plead fraud under Pennsylvania law, Plaintiffs had to allege, *inter alia*, that: (1) Defendants knew their vaccine was defective at the time Plaintiffs' placed their order in 2013; and, (2) Defendants made a material misrepresentation about the quality of their vaccine with the intent to mislead Plaintiffs into making the purchase. *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256-57 (3d Cir. 2013). Although the Amended Complaint alleges in a conclusory manner that Defendants "knew or should have known" that the 2013-2014 lots were defective, *id.* ¶ 49, it does not include any factual allegations from which the Court could conclude that Defendants in fact knew in the summer of 2013 that the lots they were selling to Plaintiffs were defective. Nor does the Amended Complaint allege that Defendants made any misstatements concerning the efficacy of their product during the relevant time period, *i.e.*, the summer of 2013, when Plaintiffs made their purchase of the allegedly defective lots. In fact, Plaintiffs specifically allege that Defendants only began to investigate the claims that their vaccine was ineffective "[s]ometime in January of 2014," approximately six months *after* Plaintiffs made their order for the defective lots at issue." *Id.* ¶ 114. It is no surprise, therefore, that in their responsive memorandum Plaintiffs point to no statements in the Amended

17

Complaint that, as required under Rule 9(b), could put Defendants on notice of who made fraudulent statements to Plaintiffs about the defective Poulvac vaccine lots, what those statements were, when those statements were made, where those statements were made, and how those statements were misleading at the time they were made. Instead, Plaintiffs merely assert that "[a]ccording to Plaintiffs' Amended Complaint, Moving Defendants through its [sic] sales and marketing staff . . . decided to continue to sell defective and ineffective lots of poultry vaccine in the Mexican market, including to Plaintiffs" and that "[b]y continuing to actively sell vaccine known to be defective, Moving Defendants clearly engaged in fraud and misrepresentation." Opp'n at 33-34. These statements do not satisfy the particularity requirements under Rule 9(b) and, accordingly, the Court shall dismiss Plaintiffs' fraud claim.[4] Because Defendants raised the Rule 9(b) issue in their motion to dismiss the original complaint, and Plaintiffs had an opportunity to, but did not, re-plead their fraud claim with particularity in their Amended Complaint, the Court dismisses Count Eight with prejudice.[5]

## IV. CONCLUSION

For the reasons stated herein, the motions to dismiss Count One (negligence), Count Two (negligent hiring and supervision), Count Eight (fraud), Count Nine (negligent misrepresentation), and Count Ten (strict liability) are granted; the motions to dismiss Count Three (breach of express warranty) and Count Six (breach of implied warranties of merchantability and/or fitness for a particular purpose) are granted with respect to Defendant

---

[4] Defendants move to dismiss Plaintiffs' claims for punitive damages. Mot. at 26. Because Plaintiffs' request punitive damages is tied to their fraud claim, which the Court has dismissed, the Court need not analyze separately whether Plaintiffs have alleged facts sufficient to substantiate a demand for punitive damages.

[5] Defendants do not argue that Plaintiffs' fraud claims should be dismissed pursuant to the economic loss doctrine. However, the Court notes that Plaintiffs' fraud claim would also be barred by that doctrine because Plaintiffs have pled only economic losses resulting from their purchase of the Poulvac vaccine and under *Werwinski* there is no exception for intentional tort claims under Pennsylvania law. *Werwinski*, 286 F.3d at 681. For this reason, the Court concludes that any attempt to amend the complaint would be futile.

Case 2:15-cv-00216-WB   Document 38   Filed 09/16/15   Page 19 of 19

19

Pfizer and denied with respect to Defendant Zoetis; and the motion to dismiss Count Seven (unjust enrichment) is denied.  An order shall follow consistent with this Opinion.

                                                  **BY THE COURT:**

                                                  **/S/WENDY BEETLESTONE, J.**

                                                  _____

                                                  **WENDY BEETLESTONE, J.**